No. 24-4546

IN THE
United States Court of Appeals
for the Fourth Circuit

UNITED STATES OF AMERICA,
Appellee,

v.

NICO LOWERS,
Appellant.
————————————

On Appeal from the United States District Court
for the Eastern District of North Carolina (Myers, J.)
————————————

**REPLY BRIEF FOR APPELLANT**
————————————

RAYMOND C. TARLTON
TARLTON LAW PLLC
PO Box 7
Durham, NC 27702
(919) 390-1278

*Counsel for Appellant*

August 8, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

ARGUMENT ............................................................................1

    I.    People Have Reasonable Expectations of Privacy in Cloud-Storage Accounts…. ..........................................................2

    II.    The Government Has Not Met its Burden to Show the Initial Warrantless Search Fell Within the Narrow Contours of the Private-Search Doctrine…………………………………………….…7

    III.    The Government Has Not Met its Burden on the Attenuation Exception to the Exclusionary Rule………………………………10

    IV.    The Government Has Not Met its Burden to Establish the *Leon* Good-Faith Bar to the Exclusionary Rule…………………………12

CONCLUSION............................................................. ..................... 15

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES**

*Carpenter v. United States,*
138 S. Ct. 2206 (2018)..........................................................................3, 4

*Coolidge v. New Hampshire,*
403 U.S. 443 (1971)..................................................................................8

*Davis v. United States,*
564 U.S. 229 (2011)................................................................................13

*Illinois v. Krull,*
480 U.S. 340 (1987)................................................................................15

*Katz v. United States,*
389 U.S. 347 (1967)..................................................................................6

*Mapp v. Ohio,*
367 U.S. 643 (1961)................................................................................10

*Riley v. California,*
573 U.S. 373 (2014)..................................................................................3

*United States v. Leon,*
468 U.S. 897 (1984).......................................................................*passim*

*United States v. Matlock,*
415 U.S. 164 (1974)................................................................................10

*United States v. Miller,*
425 U.S. 435 (1976)..................................................................................2

*Steagald v. United States,*
451 U.S. 204 (1981)................................................................................10

*Weeks v. United States,*
232 U.S. 383 (1914)................................................................................10

*Wong Sun v. United States,*
    317 U.S. 471, 485 (1963)......................................................................10

*Heidi Grp., Inc. v. Tex. HHS Comm'n,*
    38 F.4th 920 (5th Cir. 2025) ............................................................6, 7

*United States v. Holmes,*
    121 F.4th 727 (9th Cir. 2024) .......................................................13, 15

*United States v. Maher,*
    120 F.4th 297 (2d Cir. 2024).....................................................*passim*

*United States v. Miller,*
    982 F.3d 412 (6th Cir. 2020)...................................................................8

*United States v. Nora,*
    765 F.3d 1049 (9th Cir. 2014)............................................................12

*United States v. Warshak,*
    631 F.3d 266 (6th Cir. 2010).........................................................4, 5, 6

*United States v. Wilson,*
    13 F.4th 961 (9th Cir. 2021) .....................................................*passim*

*United States v. . Zelaya-Veliz,*
    94 F.4th 321 (4th Cir. 2024). ...............................................................4


**STATUTES**
18 U.S.C. § 2258A(a)(1)............................................................................14

18 U.S.C. § 2258A(c) ...............................................................................14

**CONSTITUTIONAL PROVISIONS**
U.S. CONST. amend. IV ...................................................................*passim*

# ARGUMENT

In our modern era of digital files and other data becoming increasingly part of everyday life, including the most personal and sensitive aspects of life, a warrantless search of files extracted from a person's cloud-storge account (content excluded from public access), and the fruits of search, deserves heightened constitutional scrutiny.

Here, the fruits of what law enforcement obtained through an initial warrantless search of files from Mr. Lowers's password protected Google Drive cloud-storage account were used repeatedly in a series of warrant applications enabling police searches on his parents' home in Virginia and his home in North Carolina, yielding, ultimately, the evidence used to prosecute him in the Eastern District of North Carolina.

At bottom, the Government has not met its burden to prove the constitutionality of its intrusion into Mr. Lowers's privacy rights—rights that impact everyone—including not meeting its burden on the good faith and attenuation doctrines that might otherwise undercut operation of the general exclusionary rule for evidence tainted by a Fourth Amendment transgression.

The district court's order denying suppression of the evidence should be reversed.

## I. People Have Reasonable Expectations of Privacy in Cloud-Storage Accounts

The Government, attempting to resurrect the antiquated third-party doctrine (e.g. no Fourth Amendment privacy rights in bank statements or that type of information voluntarily given to a third party, *see, .e.g., United States v. Miller*, 425 U.S. 435, 442 (1976)) into the modern era of cloud-technology, relies heavily on Google's terms of service and other policies to suggest that one cannot have a reasonable expectation of privacy as to files contained in a Google Drive cloud-storage account. (Gov Br. at 20-24). Thus, in its view, no "search" under the meaning of the Fourth Amendment occurred. (Gov Br. at 20-24). And, according to it (and the district court), there is nothing else for this Court to consider. But this is not so.

While beyond this threshold issue of whether a Fourth Amendment search occurred, Mr. Lowers's case is centered around the contours of the private-search doctrine line of Fourth Amendment cases that presuppose a Fourth Amendment search is in play if the government actor exceeds the scope of the private search. However, if this Court placed its

imprimatur on the Government's threshold position, derived from the third-party doctrine, that the Fourth Amendment is not implicated when a major tech provider's "fine print" informs users that it will use algorithms to scan the contents of data on its servers, because the users cannot have reasonable expectations of privacy in password-protected cloud accounts (email, calendars, video conferencing, team messaging or chats, word-processing, spreadsheets, PowerPoint presentation files, data management, and other platforms securing all kinds of digital "papers, and effects"), due to the "contract". If true, that would leave the Government free to team up with big tech providers as its agents and digitally snoop through the contents of password protected cloud accounts on those providers' servers, free of any Fourth Amendment oversight. Yet the thrust of Supreme Court and this Court's precedents say otherwise.

Against the backdrop of decisions cementing that people possess Fourth Amendment privacy rights in cell phone contents that often contain access to data held by third-party tech providers on cloud servers, *see Riley v. California,* 573 U.S. 373 (2014), and cell-phone location tracking data held by third-party cell service providers, *see Carpenter v.*

*United States,* 585 U.S. 296 (2018), this Court embraced the position of what it described as a "consensus of federal courts" on privacy rights in private electronic communications and extended that privacy logic to a person's private direct messages or "DMs" within a person's cloud-based social media accounts (leading platforms include, Facebook; Instagram; LinkedIn; WhatsApp; SnapChat; TikTok; and X --formerly Twitter):

> It cannot be the rule that the government can access someone's personal conversations and communications without meeting the warrant requirement or one of the Supreme Court's delineated exceptions to it. The judiciary would not allow such a trespass upon privacy at its core.

*United States v. Zelaya-Veliz*, 94 F.4th 321, 334 (4th Cir. 2024). One of the decisions by a sister circuit cited in *Zelaya-Veliz* was *United States v. Warshak*, a case that rejected Government arguments, like here, that a user's contractual arrangements (a company's terms of service or the like) with tech providers over their account eliminate Fourth Amendment privacy expectations in those private communication accounts stored with those providers (i.e. commercial internet service providers or ISPs). 631 F.3d 266, 287 (2010) ("the mere ability of a third-party to access the contents of a communication cannot be sufficient to extinguish a

reasonable expectation of privacy."); *see also United States v. Maher*, 120 F.4 297, 307 (2d Cir. 2024).

Furthermore, a tech-provider like Google does not need to use heavy privacy protocols like end-to-end encryption in the cloud accounts it offers to users, for those users to have a reasonable expectation of privacy. And a tech-provider's terms of use, which enable it to use technology to monitor, or even access, to some extent, the contents of a cloud-account in order to protect itself and its property from improper or unlawful behavior (a laudable goal that would be nearly impossible if end-to-end encryption was implemented), is nothing new in Fourth Amendment law, which, standing alone, would defeat a reasonable expectation of privacy. *See Warshak*, 631 F.3d at 288. Telephone companies maintained a similar right in their use terms when the Supreme Court, in *Katz v. United States*, 389 U.S. 347, 352 (1967), decided it was "reasonable to expect privacy during a phone call despite the ability of an operator to listen in". *Warshak*, 631 F.3d at 288 (cleaned up) (telephone companies maintained a right in their terms in the 1960s to listen to phone calls to some degree to ensure no improper or unlawful use of their facilities was going on).

In line with this momentum in Fourth Amendment cases, the Fifth Circuit earlier this year, relying in part on this Court's decision in *Zelaya-Veliz*, the Sixth Circuit's decision in *Warshak* and the Second Circuit's decision in *Maher*, *supra*, rejected a similar third-party doctrine based argument Government makes here, and instead joined the consensus of federal courts and ruled that a user of a Dropbox cloud-stored file management account, completely analogous to a Google Drive account, has a reasonable expectation of privacy in the documents and files held in that account. *See Heidi Grp., Inc. v. Tex. HHS Comm'n*, 138 F.4th 920, 934-35 (5th Cir. 2025). That court reasoned that cloud-stored documents in an account like Dropbox are "analogous to letters, phone calls, emails, and social media messages: Each contains information transmitted through or stored with an intermediary that is not intended to be broadcast to the world." *Id*. at 935 (cleaned up) (citing *Katz*, 389 U.S. at 352). While *Heidi Grp., Inc*. observed that law enforcement seeking merely meta-data type information from a tech-provider about a cloud storage account, such as whether a person has an account or whether a person has accessed that account, may not constitute a search, the court asserted that, "the government cannot access the content of Heidi's

documents and files [in Dropbox] without implicating the Fourth Amendment." *Id.* at 935.

So too here. When the detective accessed data from Mr. Lowers's Google Drive account, their actions intruded on files taken from a sphere (cloud-storage account) in which Mr. Lowers's had a reasonable expectation of privacy. Therefore, the detective's actions constituted a search having to meet the Fourth Amendment's warrant requirement or a delineated exception to it. But there was no initial warrant, and the Government has not met its burden to establish that the detective acted within the scope of a delineated exception, such as the private search doctrine it also invokes.

## II. The Government Has Not Met its Burden to Show the Initial Warrantless Search Fell Within the Narrow Contours of the Private-Search Doctrine

The Government sets out that if the Fourth Amendment is implicated, the detective's warrantless review of files or data (from Mr. Lowers's Google cloud-storage account) not reviewed by a human at Google is still within the scope of the private-search doctrine. (Gov. Resp. Br. at 26-31). To this end, the Government makes an effort to claim that *United States v. Wilson*, 13 F.4th 961 (9th Cir. 2021), was wrongly decided

by the Ninth Circuit (and, in contrast, that *United States v. Miller*, 982 F.3d 412 (6th Cir. 2020) was correctly decided), and as part of that effort it muses that Mr. Lowers has not challenged the reliability of Google's hash-matching technology. That is not so. Furthermore, the Government is burden shifting.

Mr. Lowers's invoked the *Wilson* (and the Second Circuit in *Maher*) analysis, questioning, *inter alia*, the reliability of hash-matching below and in his opening brief. JA73-JA90; Opening Br. at 20; *see Wilson*, 13 F.4th at 967-73; *Maher*, 120 F.4th at 301. The Government—not Mr. Lowers—carries the burden of proof to show that the detective's warrantless search fell within the contours of a well-delineated exception and otherwise was constitutional. *See Coolidge v. New Hampshire*, 403 U.S. 443, 454- 55 (1971). Despite shouldering this weighty burden, the Government expressly chose to not seek an evidentiary hearing in the district court (to be sure, Mr. Lowers, who had no evidence burden, did not pursue an evidentiary hearing):

> The United States of America…hereby notifies the Court that the Government does not believe a hearing in necessary.

JA234. And no evidentiary hearing took place. Because there was no evidentiary hearing below or other persuasive or credible evidence offered by the Government below about the purported reliability of Google's proprietary hashing technology, it makes little sense for the Government to describe the district court's analysis, drawn from case law and secondary sources, in the court's order as "detailed and well-supported [factual] **findings** about the reliability of hashing [that] are entitled to great deference." Gov. Br. at 29 (emphasis added). The Government has not demonstrated that the detective's warrantless search was within the scope of the private-search doctrine, a "narrow doctrine with limited applications." *Wilson*, 13 F.4th at 968 (cleaned up).

Finally, the Government also suggests throughout is response brief that the detective did not run afoul of *Wilson's* analysis of the private-search doctrine in this context, because, the Government now claims, in some fashion, that the detective did in fact look at one or more files, from the batch that had previously been reviewed by a human at Google, and used that untainted information in their search warrant application(s). Gov. Br. at 39 n.8, 43 n.10, 43-44. But the Government did not take that factual position below, and it should not be allowed to change that

position now. JA180-JA181, JA183-JA184; *see, e.,g., Steagald v. United States*, 451 U.S. 204, 209 (1981) (Government may lose right to raise factual issue on appeal if it "made contrary assertions in the courts below,…acquiesced in contrary findings," or failed to raise issue "in a timely fashion").

### III. The Government Has Not Met its Burden on the Attenuation Exception to the Exclusionary Rule

The general rule for a Fourth Amendment violation is that evidence unlawfully obtained, as well as its fruits, both direct and indirect, must be suppressed. *Weeks v. United States*, 232 U.S. 383 (1914); *Mapp v. Ohio*, 367 U.S. 643 (1961); *Wong Sun*, 371 U.S. 471, 485 (1963). Once a basis for suppression is set out, the burden is on the Government. *United States v. Matlock*, 415 U.S. 164, 177-78 n. 14 (1974).

Here the Government asks this Court to apply the attenuation doctrine to block the ordinary operation of the exclusionary rule. To deflect from the reality that information the detective gleaned from their warrantless search of files from Mr. Lowers's Google Drive cloud-storage account was repeated in a cascading series of applications for search warrants that led the police to 1) identify Mr. Lowers as their suspect and 2) ultimately led to the seizure of evidence in North Carolina used to

directly prosecute Mr. Lowers, JA192; JA196-JA197; JA199-JA200; JA204; JA210-JA212; JA220-JA222; JA244, the Government offers a speculative scenario about what might have happened if the detective never obtained search warrants. The Government posits that the detective could have gone to Mr. Lowers's parents at their house in Virginia without a warrant, and the parents still would have told them information about Mr. Lowers and allowed them to examine their cell phones to rule themselves out. And then police in North Carolina, still without a warrant, would have gone to talk to Mr. Lowers, and he would have still consented to a search of his devices, etc.

The Government's speculation is off-base, *inter alia*, because it wrongly assumes that the securing of a search warrant and raid on the parents' home in Virginia (as well as the search warrant executed on his Google account after its initial warrantless search yielding contraband images), played no role in his parents giving police information about him and their consent to search devices. But common-sense dictates that search warrant-based raids, especially when police have already found illegal images in a cloud-account and are likely announcing that, may heavily influence how someone responds to police. This speculative

scenario offered by the Government also wrongly assumes the same as to Mr. Lowers's giving consent to search his devices, consent only given after the raid on his parents' home (and execution of a warrant on his Google cloud account). *See, e.g., United States v. Nora*, 765 F.3d 1049, 1057 (9th Cir. 2014) (incriminating statements not an intervening event under attenuation doctrine when answers likely influenced by knowledge that police had already discovered drugs and cash).

Moreover, the Government, having the burden to establish attenuation, could have tried to establish this theory at an evidentiary hearing in the district court that the search warrants did not influence anyone, including his parents and Mr. Lowers, to give police consent and other information, but it chose not to seek an evidentiary hearing. JA234.

## IV. The Government Has Not Met its Burden to Establish the *Leon* Good-Faith Bar to the Exclusionary Rule

The Government bears the burden of proof that the *Leon* good-faith doctrine should avoid the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 924 (1984).

Generally, when the Government claims that law enforcement acted in good-faith under *Leon* during a warrantless search, it needs to point to binding appellate precedent authorizing the challenged conduct

even if that precedent is later overturned. *See Davis v. United States*, 564 U.S. 229, 239-40 (2011); *accord United States v. Holmes*, 121 F.4th 727, 737 (9th Cir. 2024) (rejecting the Government's argument that *Leon* good-faith doctrine should apply to warrantless review of hash matched files in violation of *Wilson* obtained through a NCMEC CyberTip from Facebook when no binding and unambiguous Ninth Circuit or Supreme Court precedent at the time of the search authorized the search); *but see Maher*, 120 F.4th 297 at 322 (applying *Leon* good-faith doctrine in the face of a warrantless search running afoul of *Wilson* under Second Circuit caselaw allowing a court to look to the state of the law in other circuits at the time of the search).

Here, there was no binding precedent on which the Government relied, allowing it to do what it did. Below, the Government argued the detective's purported good-faith due to, in its view, no binding precedent saying they could not do what they did. JA184-JA185. However, the Supreme Court precedents that *Wilson* relied on to determine that the Government exceeded the narrow scope of the private-search doctrine were in effect at the time the detective here did the same warrantless search as the one that took place in *Wilson*.

Now, for the first time on appeal, the Government argues the detective acted in objective good-faith in looking at the files from Mr. Lowers's Google cloud-storage account without a warrant, due to the existence of a statute (that the Government does not specifically cite) requiring the National Center for Missing and Exploited Children (NCMEC) to "make available" reports of child pornography to law enforcement when NCMEC receives a CyberTip about potential child pornography and related files from tech-providers like Google. Gov. Br. at 33-34.[1] The Government argues that "make available" a report language is supposedly superfluous, if law enforcement must get a search warrant to review the contents of files transferred to it as part of a NCMEC report.[2] Under an ordinary understanding of what constitutes making available a report to law enforcement, it is logically consistent

_____

[1] The Government also points to the Second Circuit in *Maher,* 120 F.4th at 302, applying *Leon*-good faith doctrine in this private-search doctrine context, but *Maher* is not binding precedent in this Circuit where the detective performed the warrantless search in this case.

[2] Without prompting from the Government below, the district court *sua sponte* invoked a NCMEC reporting statute, 18 U.S.C. 2258A(a)(1) and (c), in its analysis and order denying Mr. Lowers's suppression motion. JA257 .7, JA258.

that law enforcement must still get a warrant to review the contents of any files transferred in connection with such a report.

And this statute that the Government does not specifically cite (but the district court did cite) appears to hardly be the type of statute with language authorizing a warrantless search that the Supreme Court confronted in *Illinois v. Krull*, 480 U.S. 340, 342-49 (1987) (statute facially authorized warrantless inspection of any business dealing auto parts), when the Court extended the *Leon*-good faith reliance doctrine beyond invalidated warrants and into the context of statutes that facially authorize warrantless searches but are later declared unconstitutional.

Here, like the Government in *Holmes*, 121 F.4th at 737, the Government never satisfied its burden to show that the *Leon*-good faith exception to the exclusionary rule should bar the general remedy for a Fourth Amendment violation: the exclusion of tainted evidence and its fruits.

## CONCLUSION

Based on these reasons, as well as the reasons in his opening brief, this Court should vacate the conviction, sentence, and judgment of the

district court and remand with instructions to grant Mr. Lowers's suppression motion.

Respectfully submitted,

/s/ RAYMOND C. TARLTON
RAYMOND C. TARLTON
TARLTON LAW PLLC
PO Box 7
Durham, NC 27702
(919) 390-1278

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,001 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Century Schoolbook font.

/s/ Raymond C. Tarlton